Counsel of Record:
Mark K. Schonfeld (MS-2798)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY 10281
(212) 336-0050
(212) 336-1319 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
                                       :
              Plaintiff,               :
                                       :
       -against-                       :
                                       :    07 Civ. 3896 (PKC)
EMPIRE DEVELOPMENT GROUP, LLC,         :
EMPIRE DEVELOPMENT GROUP FUND I LLC,   :
CASTLE HILL VENTURES, LLC,             :
FELIX STRASHNOV a/k/a FELIX STRATON and :
MICHAEL AYNGORN,                       :
                                       :
              Defendants.              :
                                       :
------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY TO EMPIRE DEVELOPMENT GROUP, LLC's OPPOSITION TO THIS COURT'S MAY 18, 2007 ORDER TO SHOW CAUSE**

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this reply to Empire Development Group, LLC's ("EDG") opposition ("Opposition") to the Commission's May 18, 2007 Order to Show Cause ("Order").

**ARGUMENT**

As a threshold matter, Defendants Empire Development Group Fund I LLC ("EDGFI"), Castle Hill Ventures, LLC, Felix Strashnov, a/k/a Felix Straton ("Straton"), and Michael Ayngorn ("Ayngorn") have failed to submit any response papers opposing this Court's Order to

Show Cause. This is particularly significant because, as Defendants Straton and Ayngorn have testified under oath, the only two properties ever purchased by any defendant in this action were neither purchased in EDG's name nor with EDG's money – to the contrary, they were purchased in Straton's and Ayngorn's names using a combination of (i) money raised in connection with the sale of the EDGFI securities (<u>not</u> securities of EDG, the party opposing the Order) and (ii) money obtained through mortgages in the names of Ayngorn's wife and Straton himself. Moreover, a large proportion of the approximately $3 million collected from investors in EDG and related entities has either been used to pay Straton's and Ayngorn's exorbitant salaries or been misappropriated by these individuals for their personal use. (<u>See, e.g.</u>, Michael Ayngorn Deposition Transcript ("Ayngorn Tr.") at 65, explaining that salary was drawn for "things that are purchased, which I shouldn't have purchased"; Felix Strashnov Deposition Transcript ("Straton Tr.") at 52: "[Ayngorn] was exceeding the amount of money that he should have taken as a salary compensation and he did numerous small ATM withdrawals to feed his addiction and gambling problem.")[1] Even notwithstanding the non-EDG defendants' tacit acquiescence to the Order, however, EDG's Opposition should be rejected for several reasons.

EDG's four paragraph response to the Order makes clear on its face why no modification to the Order is necessary. EDG first complains that "[t]he Corporation was not served until the afternoon of May 18, 2007 [and the] Corporation is actively reviewing its records and collecting relevant facts in order to assist in its defense." (Opp. ¶ 1) Of course, service on May 18 was unquestionably timely – in fact, May 18 is the day this Court issued the Order and the date by which this Court instructed the Commission to perfect service – and more significantly, EDG has

---

[1] Relevant testimony from Felix Straton's and Michael Ayngorn's deposition transcripts are attached to the accompanying June 1, 2007 Reply Declaration of Terrance P. Bohan at Exs. 2 and 3, respectively.

2

now had ample time to collect and review potentially relevant documents, as evidenced by Defendants' responses to the Commission's document requests and Defendants' accompanying document production. (See Defs' May 23, 2007 Responses, Ex. 1 to Bohan Decl.).[2]

What facts have surfaced since EDG submitted its opposition papers confirm what the Commission believed when it filed its complaint in this action. Among other facts, the Commission has learned through Defendants' sworn testimony that:

- While Empire was soliciting investors and boasting of many millions of dollars in potential profits, Ayngorn, the person primarily responsible for raising the funds on which the Company's plans relied (see Ayngorn Tr. at 22), was entirely debilitated by his addiction to alcohol and gambling. Ayngorn confessed to "poor decisions" in using Company funds for personal benefit (id. at 82-84: "I was dumb, and I made some very poor decisions, and that's pretty much it"), including the purchase of a 1976 Corvette and payments for two other cars Ayngorn and his wife utilized for personal use (id. at 60-62, 74); he confessed to withdrawing from the Company's accounts more money as "compensation" than he was permitted (id. at 71: "Q: Did you withdraw money from the Empire Development Fund and Empire Development Group accounts above and beyond the salary that you were supposed to earn in order to pay for your gambling? A: Yes, I did."); and he explained that he "was under the influence of alcohol" during the work day (id. at

---

[2] Straton's and Ayngorn's testimony raises numerous concerns regarding Defendants' document collection and retention procedures. In fact, Straton testified that Defendants had no document retention policies in place. (Straton Tr. at 187) Any failures by Defendants to preserve and identify documents relevant to this action, however, should not be considered in *opposition* to an Order intended, *inter alia*, to preserve the *status quo* and thereby prevent the destruction of potentially critical evidence.

3

191). Ayngorn's drinking, which he explained has only been under control for approximately two months, became such a problem that Straton confronted Ayngorn repeatedly and attempted to restrict Ayngorn's access to Company funds (id. at 72-73, testifying that Straton took away Ayngorn's debit cards; see also Straton Tr. at 133, explaining that certain business transactions were structured so as to restrict Ayngorn's access to EDG funds). All the while, Straton was sending letters to investors boasting about the Company's bright future and participating in the solicitation of investors. Straton even launched a new offering at this time, the placement memorandum for which failed to disclose Ayngorn's addictions and misappropriation of corporate assets. (See generally 2006 Placement Memorandum, Ex 2 Appendix[3])

- Contrary to express representations Defendants made to investors, EDG had not in fact taken any significant steps to become a public company. (See Straton Tr. at 83, confessing that, in hindsight, he realizes statements to investors regarding the "registration" of EDG shares were inaccurate) Ayngorn explained that while going public "would be a wonderful situation," he never expected to be able to do so. (Ayngorn Tr. at 146-47)

- Numerous material representations to investors concerning business the Company was purportedly conducting were, contrary to the plain language of the Company's communications, intended, according to Straton, only to be statements of what Straton "hoped" to do if the Company could raise many millions of

---

[3] "Appendix" refers to the Appendix of Exhibits to Declarations in Support of Plaintiff's Emergency Application for Temporary Restraining Order, Preliminary Injunction, Asset Freeze, Order to Show Cause, and Other Relief, dated May 17, 2007.

additional funding – funding that neither Straton nor Ayngorn reasonably believed was anything other than a pipe dream, let alone imminent. (See, e.g., Straton Tr. at 207-08; 261-64)

EDG also claims in its Opposition that the "Order imperils the interests of the Corporation's shareholders by actively preventing the sale of the existing corporate property located at 2359 Royce Street, Brooklyn, NY, which property is currently listed for sale." (Opp. ¶ 2). Again, facts revealed in the days since EDG filed its Opposition illustrate just how specious this claim really is. Ayngorn testified that EDG does not even have a certificate of occupancy (temporary or permanent) for the Royce Street property, and has yet to submit the paperwork necessary to acquire such a certificate. (Ayngorn Tr. at 86-87, 192) This process has no doubt been complicated by EDG's decision, in Ayngorn's words, to try and "sail through" by renovating the Royce Street property without applying for necessary permits. (Id. at 86) Ayngorn's testimony that he has used the Royce Street property as his family's personal residence for the last 18 months (rent free) further calls into question EDG's intentions concerning this property. (Id. at 6-7) Given Ayngorn's confessed improper raiding of EDG's funds in the past, and in light of Ayngorn's recent transfer of the Royce Street property to his wife's name, EDG should hardly be afforded any benefit of the doubt concerning what may be the most valuable asset potentially available to help investors recover at least pennies on their fraudulently obtained dollars.

Next, EDG claims that the "Order imperils the interests of the shareholders of the Corporation by preventing the completion of the development of existing corporate real estate located at 2 Harris Place, Fairlawn, NJ, potentially resulting in a total loss of investment." (Opp. ¶ 3). One might think, after reading this statement in EDG's Opposition, that EDG has actually

5

taken significant steps toward the completion of development at the Harris Place property. In fact, Straton made clear that the Harris Place property is not remotely close to salable as a finished home. (See Straton Tr. at 127; see also Ayngorn Tr. at 124-25.) As for EDG's contention that this Court's Order poses a threat of a "total loss," this is simply without merit. EDG can offer no basis (and, tellingly, has offered none) to support the idea that property purchased for several hundred thousand dollars would somehow lose all of its value if this Court's Order remains in place. Indeed, a much greater risk to the property is posed by leaving its future in the hands of Defendants. As Straton confessed, Defendants have never renovated and sold *any* real estate investments. (Straton Tr. at 157) Ayngorn testified that he left management of the New Jersey property to Straton (Ayngorn Tr. at 124-25, 135), but Straton could offer few details about his plans for the property other than to mention a partnership he formed to develop the property with, of all people, Ayngorn's father. (Straton Tr. at 104-05) Not surprisingly, it appears that neither Straton nor Ayngorn ever disclosed this obvious potential conflict of interest to any investors.

Finally, facts revealed since the Commission first filed its Complaint in this action have confirmed that the Commission's fears of continuing securities violations are well-founded. Documents produced by Defendants indicate that Straton and Ayngorn continued to draw salaries from EDG as late as May of this year, even as the Company's account balance grew so low that Ayngorn now claims to be unsure how Defendants will even pay for the Royce Street mortgages. (Ayngorn Tr. at 117) Documents and testimony also indicate that the Company continued to solicit and collect money from investors as recently as last month, even as the Company's demise became abundantly clear. (See Ayngorn Tr. at 121; see also id. at 118, explaining that EDG's only source of income was investors, thus making clear that investor

6

funds were the source of the deposits in and around May 2007 into the EDG bank account.)

## CONCLUSION

In short, EDG's Opposition asked for time to gather more facts before this Court entered an order continuing to enjoin EDG from taking certain actions that could impact the rights of EDG investors. What facts have come to light since this Court granted the Commission's Order to Show Cause, however, have made all the more clear that injunctive relieve is absolutely necessary to prevent Defendants from dissipating what few assets seem to remain after Defendants squandered approximately $3 million of investors' money. As EDG has offered no basis for giving EDG any more leeway than the May 18, 2007 Order already affords them, and as defendants other than EDG have chosen not to oppose the Commission's Order to Show Cause, the Commission respectfully submits that this Court should grant the Commission's Application for Relief in its entirety.

Dated: June 1, 2007
New York, New York

Respectfully Submitted,

_Doria G. Stetch_

Doria G. Stetch (DS 3307)
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281
(212) 336-0024

Of Counsel:

Andrew M. Calamari
Meaghan Cheung
Michael Paley
Michael Birnbaum