Counsel of Record:
Mark K. Schonfeld (MS-2798)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY 10281
(212) 336-1020
(212) 336-1322 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,          :
                                             :
              Plaintiff,                     :
                                             :
    -against-                                :
                                             :    07 Civ. 3896 (PKC)
EMPIRE DEVELOPMENT GROUP, LLC,               :
EMPIRE DEVELOPMENT GROUP FUND I, LLC,        :
CASTLE HILL VENTURES, LLC,                   :
FELIX STRASHNOV a/k/a FELIX STRATON and,     :
MICHAEL AYNGORN,                             :
                                             :
              Defendants.                    :
                                             :
-----------------------------------------------------------------------x

DECLARATION OF EDWARD JANOWSKY IN FURTHER SUPPORT OF
PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, ASSET FREEZE,
ORDER TO SHOW CAUSE, AND OTHER RELIEF

I, Edward Janowsky, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am over 18 years of age and am employed as a staff accountant in the Broker/Dealer Inspection Program in the Securities and Exchange Commission's New York Regional Office. I have been employed at the Commission for over eight years. I make this Declaration in further support of the Commission's Emergency Application for Temporary Restraining Order, Asset Freeze, Preliminary Injunction, Order to Show Cause, and Other Relief (the "Application") against Felix Strashnov, a/k/a Felix Straton, Michael Ayngorn, Empire Development Group,

LLC ("EDG"), Empire Development Group, Fund I LLC ("EDGFI") and Castle Hill Ventures, LLC.

2. This Declaration is based on an interview with EDG investor David Essler that I conducted along with other Commission staff on June 1, 2007.

3. The statements of others set forth herein are described in substance and in part, and not verbatim. To the extent that there are assertions herein concerning dates and numbers, they are approximate, based upon information and evidence gathered to date. Because the Commission submits this Declaration for the limited purpose of supporting this Application, I have not set forth each and every fact that I know about the investigation.

4. David Essler ("Essler") told the staff that he is 59 years old, is employed as a floor covering installer and lives in Alexandria, Minnesota. Essler invested $25,000 in EDG.

5. Essler originally was contacted via cold call by David Stone ("Stone") regarding an investment in EDG. Stone solicited a minimum investment of $50,000. After speaking with Stone on a few occasions, Essler was contacted by Michael Ayngorn ("Ayngorn"), who he believed was the president of EDG.

6. Essler is not an accredited investor. His annual income is between $60,000-$70,000. His combined income (with his wife) is far less than $300,000. Essler indicated that his net worth is approximately $750,000.

7. Essler told Ayngorn and Stone that he did not have a lot of money to invest in EDG. Ayngorn was aware of Essler's income, and had no concern about him investing.

8. Ayngorn told Essler that EDG was a real estate development company. Ayngorn told Essler that the goal of EDG was to raise money for real estate development projects. Additionally, Ayngorn indicated that EDG was going to go public, via an initial public offering,

within a couple of years.

9. Ayngorn explained to Essler that when EDG went public, Essler would be able to sell his shares at a large profit.

10. Essler invested $25,000 in EDG via an IRA account through Sterling Trust Co. Essler believes that he received 10,000 shares at $2.50 per share, plus 500 "bonus" shares of EDG, which Ayngorn told Essler could be sold at the IPO.

11. Ayngorn told Essler that he should invest as much money as possible before the EDG IPO, because once the IPO occurred the shares would be more expensive.

12. Ayngorn told Essler that the shares of EDG could be worth $5, $10 or up to $50 per share when the IPO occurred. As such, Ayngorn told Essler that the 10,000 shares could be worth $500,000 at the IPO.

13. Ayngorn told Essler that if he invested more money in EDG, he would be "set up for life" in a couple of years.

14. Essler stated that Ayngorn instructed him to indicate on investor subscription documents for EDG that Essler had a net worth $1 million, even though Essler told Ayngorn that his net worth was only $750,000. Essler does not recall whether he did so.

15. Essler understood that EDG had invested in two properties, one in Fairlawn, New Jersey and the other in New York. Essler was told that the house in Fairlawn, New Jersey had some trouble in obtaining a permit, thus EDG could not sell the house to buy another property, nor give any returns to the investors.

16. Ayngorn repeatedly solicited Essler to invest more money in EDG. Essler told Ayngorn that he wanted to see some returns before even considering investing additional funds in EDG. During each solicitation, Ayngorn emphasized the EDG IPO, and the need for Essler to invest

more funds prior to the IPO.

17. Ayngorn told Essler that the unsubscribed portion of the first EDG offering would be given to existing stock holders at some future point.

18. Essler was told by Ayngorn that EDG needed to cut costs, therefore, no paperwork or statements were sent to investors (including Essler).

19. On the morning of May 25, 2007, Essler called Ayngorn to get an update on his investment in EDG. During this conversation Ayngorn told Essler that things were progressing nicely with EDG, and that they were working towards selling the Fairlawn property. Ayngorn told Essler that as a result of that sale, Essler would see some returns on his investment in EDG. Ayngorn further stated that within 2-3 months, cash would be put into Essler's IRA account held at Sterling Trust.

20. Ayngorn told Essler that a portion of the proceeds from the sale of the Fairlawn property would be used to invest in another property, and that a portion would be used to provide returns to investors, including Essler. Essler said that Ayngorn indicated that the amount Essler would receive would depend on how much of the proceeds from the Fairlawn sale would be used for the purchase of the new property.

21. I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2007
New York, New York

_____
Edward Janowsky