Counsel of Record:
Mark K. Schonfeld (MS-2798)
Regional Director

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY 10281
(212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
**SECURITIES AND EXCHANGE COMMISSION,**

          **Plaintiff,**

  -against-

**EMPIRE DEVELOPMENT GROUP, LLC.,**
**EMPIRE DEVELOPMENT GROUP FUND I, LLC.,**
**CASTLE HILL VENTURES, LLC.,**
**FELIX STRASHNOV a/k/a FELIX STRATON and**
**MICHAEL AYNGORN,**

          **Defendants.**

-------------------------------------------------------------------x

07 Civ. 3896 (PKC)

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Securities and Exchange Commission (the "Commission") submits this reply memorandum of law in further support of its motion for summary judgment ("Reply") against Empire Development Group, LLC ("EDG," or the "Company"), Empire Development Group Fund I, LLC ("EDGFI"), Castle Hill Ventures, LLC ("Castle Hill"), Felix Strashnov ("Straton") and Michael Ayngorn (collectively, "Defendants").

## I. PRELIMINARY STATEMENT

As the Commission received no response to its motion for summary judgment ("Motion") from any defendant other than EDG, this Reply responds only to those issues raised in EDG's Reply to Plaintiff SEC's Motion for Summary Judgment ("Response"). As to all other Defendants, the Commission respectfully submits that summary judgment should be granted based on the undisputed facts set forth in the Commission's Rule 56.1 Statement.

EDG's Response fails to identify any genuine issue of material fact relating to any element of the Commission's claims against EDG. In fact, EDG chose to ignore entirely most of the material facts contained in the Commission's 56.1 Statement concerning numerous material misrepresentations and omissions. As set forth in the Commission's 56.1 Statement, EDG's communications to investors unquestionably misrepresented material facts concerning, among other things: non-existent development projects in Florida, Nevada and California (56.1 Stmt. ¶ 23; Moving Mem. at 19); projects EDG falsely boasted were "being finalized as we speak" (56.1 Stmt. ¶ 21; Moving Mem. at 18); projections based on assumptions Defendants knew to be false (56.1 Stmt. ¶ 19; Moving Mem. at 18-19); phantom "pipeline financing" (56.1 Stmt. ¶¶ 23, 24); Moving Mem. at 17-18); and EDG's purportedly imminent IPO. (56.1 Stmt. ¶¶ 16-18; Moving Mem. at 17) EDG does not even mention these misrepresentations or the facts demonstrating their falsehood other than to state, in its Rule 56.1 Response, that EDG's statements regarding an

imminent IPO did not constitute "deliberate" misrepresentations. (See 56.1 Response at ¶¶ 16 and 17.)

Against the unambiguous evidence of fraud presented by the Commission, EDG offers only a flat denial without reference to any facts whatsoever, stating: "Empire denies that its [PPMs] and the letters it sent to its stockholders contained material misrepresentations and omissions." (Response at 2) And on those few occasions that EDG does address facts relating to Defendants' misrepresentations, EDG's statements are either presented without any reference to any contradictory facts in the record or are based on a mischaracterization of the plain record in this case. Accordingly, the Commission's motion for summary judgment should be granted against EDG as well as all other defendants.

## II.   ARGUMENT

### A.   EDG Does Not Raise Any Issue of Material Fact Pertaining to the Commission's Section 5 Claims.

EDG responds to the overwhelming evidence demonstrating its liability under Section 5 of the Securities Act with two unsupported assertions. First, EDG maintains that "a factual issue remains as to whether Empire's investors represented themselves as 'accredited' investors." (EDG Response at 2.) Second, EDG claims that it "did not engage in a general solicitation to sell units but narrowed its attempt to solicit investors." (Id.)

#### 1.   No Genuine Issue of Material Fact Exists Regarding the Unaccredited Status of Certain EDG Investors.

As the Commission documented in its moving papers, Defendants indisputably sold EDG securities to unaccredited investors. (See 56.1 ¶10 and accompanying exhibits). Indeed, the investor questionnaires identified by the Commission are examples of the very documents on which Defendants testified they relied in ascertaining whether certain investors were accredited.

2

(Straton Tr. at 66-67) In response, the only "support" EDG offers for its claim that certain investors' accredited status presents a genuine issue of fact is a reference to Defendants' previous representations to the Commission that they believed their investors were accredited. But self-serving statements contrary to the overwhelming body of evidence in the record are not sufficient to withstand summary judgment. As the Court of Appeals for the Second Circuit has explained repeatedly, a "non-moving party may not rely on mere conclusory allegations nor (sic) speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Jeffreys v. City of New York, 426 F.2d 549, 554 (2d Cir. 2005) (Non-movant "may not rely on conclusory allegations or unsubstantiated speculation.") quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).

EDG neither offers proof that all of its investors are accredited nor offers evidence contradicting the record set forth by the Commission demonstrating the unaccredited status of certain EDG investors. Instead, EDG refers the Court to the deposition testimony of one investor, William Kolb, whose deposition was conducted months after EDG chose to accept his investment. In EDG's Rule 56.1 Response, EDG argues that Kolb might have been accredited because, in his deposition, "Mr. Kolb admitted that he had inherited a significant amount of money from his wife – in excess of four million dollars . . . ." (Response at 3; EDG 56.1 Response at ¶ 10.) But Mr. Kolb said no such thing. In fact, the only reference in Kolb's deposition transcript to four million dollars relates to a sum Kolb's brother-in-law received in connection with a personal injury dispute that did not appear to even involve William Kolb. (Kolb. Tr. at 42) Moreover, Kolb's testimony in that very deposition is entirely consistent with the questionnaire EDG wants to ignore:

3

> Q: Was your net worth, other than your house, more or less than a million dollars over the last three years?
>
> A: Much less.
>
> Q: Was it more or less than half a million?
>
> A: Much less.

(Kolb. Tr. at 9) Thus, not only does the investor questionnaire on which the Company relied to determine which investors were accredited belie Defendants' claims about Kolb (see Pltf's. Ex. 8), but Kolb's testimony fails entirely to contradict the Commission's claims regarding Kolb's – as well as numerous other investors' – non-accredited status.

2.     <u>EDG Fails to Identify Any Disputed Issue of Material Fact Relating to its General Solicitation of Potential Investors.</u>

Telephoning customers, with whom there is no pre-existing relationship, to sell an unregistered security is a violation of the general solicitation prohibition in Rule 502. See Johnston v. Bumba, 764 F. Supp. 1263, 1274-75 (N.D. Ill. 1991). Defendants Ayngorn and Straton both testified that telephoning individuals with whom they had no pre-existing relationship is precisely the approach EDG took to identify investors. (Ayngorn Tr. at 41-42; Straton Tr. at 65-66). In its response, EDG asserts that it "narrowed its attempt to solicit investors" (Response at 2), but the Company fails to cite to any evidence in the record consistent with that contention.

EDG points in its response to Defendants' proclaimed reliance on a list of potential investors purportedly generated by a marketing entity called "Code Busters." (56.1 Response at ¶10). EDG notes that Defendants testified they believed the "Code Busters list" included only names of accredited investors. (Id.). But this list does not present any issue of disputed fact. First of all, the very questionnaires on which Defendants relied made clear that any belief that all

4

investors were accredited was mistaken. Second, notwithstanding EDG's denials, Straton admitted that EDG allowed unaccredited investors to purchase shares of the Company:

> Q. I'll back up a step. Did I understand you correctly earlier that there were individuals who did not meet the specific numbers you understood to be required to be an accredited investor but who you deemed appropriate investors nonetheless?
>
> A. Yes. ...

(Straton Tr. at 75)

Third, any such subjective belief would only be relevant to establish scienter, which is not an element of a violation of Section 5(a) or 5(c) of the Securities Act. See SEC v. Softpoint, Inc., 958 F. Supp. 846, 859-60, aff'd, 1998 U.S. App. Lexis 20264 (2d Cir. June 29, 1998).[1]

Against this evidence, EDG's claim that it "narrowed its attempts to solicit investors" is nothing more than the kind of unsupported, "wholly fanciful" explanation that the Second Circuit has held should be ignored absent the kind of "hard evidence" so clearly lacking here.

## B. EDG Fails to Identify Any Genuine Factual Dispute Pertaining to the Commission's Fraud Claims.

The balance of EDG's Response also fails to create any disputed issue of material fact. As the Commission's 56.1 Statement made clear, Defendants never disclosed to investors (i) that they intended to utilize investors' money to purchase homes in Straton's and Ayngorn's name; (ii) that they intended to use those homes for their personal benefit; or (iii) that Defendants intended to utilize Company funds to cover additional personal expenses, including the payment of personal gambling debts.

---

[1] Furthermore, neither Ayngorn nor Straton could identify any document reflecting such a request or, for that matter, any contact at Code Busters with whom EDG transacted. In fact, EDG informed the Commission that it could not even locate the list of potential investors EDG claims to have utilized, even though the Company purportedly used this list at least until the inception of this lawsuit. (Supp. Birnbaum Decl. at ¶ 8). The Commission's independent research did not reveal any company called Code Busters that resembled Defendants' description of this purported marketing company. (Id. at ¶ 9)

5

EDG's Response fails to create any disputed issue of material fact concerning these omissions. In fact, EDG acknowledges that the Company's letters to investors never "stated that investor funds would be used to purchase personal properties for the (sic) Ayngorn and Strashnov." (Response at 2) EDG contends that the Company had a reason for placing the Brooklyn and Fairlawn properties out of the reach of EDG investors – namely, the Company was purportedly unable to secure a favorable mortgage. But this response – even if it were creditable – does not create any disputed issue of material fact. First, regardless of why Defendants may initially have chosen to use investors' funds to purchase property in the Individual Defendants' names, the record is clear that Straton and Ayngorn intended to use the purchased properties as their own personal residences. (Moving Mem. at 20) In fact, Defendants' use of EDG funds for personal benefit extended to Ayngorn's and Straton's inappropriate expropriation of EDG funds to cover expenses ranging from luxury cars to personal gambling debts. (Id. at 6) That Company funds were utilized to purchase property whose legal title was not held by EDG and for personal expenses that brought no benefit to EDG investors is surely something an investor would want to consider as part of the "total mix" of information when deciding whether to invest in EDG. See TSC Industries v. Northway, Inc., 426 U.S. 438, 449 (1976) ("A statement or omission is material if a reasonable investor would view its disclosure as significantly altering the 'total mix' of information available.") But EDG chose not to disclose these uses of EDG funds to investors, so the investors were unable to consider these plainly material facts when determining whether to purchase EDG securities.

C. **EDG's Continued Failure to Account for Investors' Funds Warrants Severe Sanction.**

EDG admits that it has not accounted for all funds collected from investors, but maintains that it accounted for "a majority of the 2.9 million" of Investors' money. (56.1

6

Response at ¶ 7) EDG's continued unwillingness to disclose how much of its investors' money was spent clearly militates in favor of imposing all of the relief requested in the Commission's Moving Memorandum. (Moving Mem. at 21-24). Indeed, EDG's failure to account for tens of thousands of EDG dollars underscores Defendants' deception and recalcitrance in this matter, both factors to be considered in weighing what relief should be awarded in this action. (Id.)

Particularly illustrative of Defendants' obfuscation in this matter is Defendants stealthful transfer of funds out of EDG accounts just as this Court was set to freeze Defendants' assets. It appears that Defendants did not include in their document production (despite requests clearly covering these documents) records reflecting eleventh hour withdrawals of tens of thousands of EDG dollars, including funds purloined by Straton and Ayngorn on May 18, 2007, only moments before this Court issued its May 18 freeze order. Even more astonishingly, bank records Defendants failed to produce indicate that funds were withdrawn from at least one bank account via check and bank card <u>after</u> this Court issued the May 18th freeze order. (<u>See</u> Birnbaum Decl. at ¶ 4.) It also appears that EDG wired $11,000 to EDG's counsel as a retainer on that same day (before the freeze order was entered, but after the Commission had notified EDG counsel that it was seeking an asset freeze). (<u>Id.</u> at ¶ 5)

As discussed in the Commission's Moving Memorandum, ongoing deceitful conduct warrants a permanent injunction and severe monetary penalties. (Moving Mem. at 21-24). Here, Defendants' deceit regarding what little remained of investors' money – followed, as it was, by verified accountings that did not reflect the dollars withdrawn from EDG accounts, warrants particularly severe sanctions.

### III.   CONCLUSION

For the foregoing reasons, as well as those set forth in the Commission's Moving Memorandum, the Commission respectfully requests that its motion for summary judgment be granted in full as a matter of law.

Dated: New York, NY
      October 17, 2007

Respectfully submitted,

By: *Doria G. Stetch*

Doria G. Stetch (DS-3307)
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281
(212) 336-1020

Of Counsel:

Meaghan Cheung
Michael Paley
Michael Birnbaum