Counsel of Record:
Mark K. Schonfeld (MS-2798)
Regional Director

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY  10281
(212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,       :
                                          :
             Plaintiff,                   :
                                          :
   -against-                              :
                                          :
                                          :   07 Civ. 3896 (PKC)
EMPIRE DEVELOPMENT GROUP, LLC.,           :
EMPIRE DEVELOPMENT GROUP FUND I, LLC,     :
CASTLE HILL VENTURES, LLC,                :
FELIX STRASHNOV a/k/a FELIX STRATON and   :
MICHAEL AYNGORN,                          :
                                          :
             Defendants.                  :
                                          :
-------------------------------------------------------------------x

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS PROPOSED FINAL JUDGMENT**

Plaintiff Securities and Exchange Commission (the "Commission") submits this Supplemental Memorandum of Law in Support of its Proposed Final Judgment against Empire Development Group, LLC ("EDG," or the "Company"), Empire Development Group Fund I, LLC ("EDGFI"), Castle Hill Ventures, LLC ("Castle Hill"), Felix Strashnov and Michael Ayngorn (collectively, "Defendants").

## I.    PRELIMINARY STATEMENT

On May 30, 2008, this Court granted in part the Commission's motion for summary judgment against all Defendants for violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), (15 U.S.C. §§77e(a), 77e(c) 77q(a)), Section 10(b) of the Exchange Act of 1934 ("Exchange Act"), (15 U.S.C. §78j(b)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). In fact, the Court awarded the Commission summary judgment on each of its claims, save one "single aspect" of Plaintiff's securities fraud claims that related to one particular alleged misrepresentation. (May 30 Order at 26.) This memorandum of law is submitted pursuant to the Court's direction to "make an updated supplemental submission on relief." (Id.)

As set forth in greater detail in the Commission's Moving Memorandum of law in Support of its Motion for Summary Judgment ("Moving Mem.") and Reply Memorandum of Law in Further Support of its Motion for Summary Judgment ("Reply Mem."), this case concerns a sham real estate company through which Defendants raised approximately $2.9 million from unsuspecting investors in order to finance Defendants Strashnov's and Ayngorn's (the "Individual Defendants") personal lifestyles. The Commission respectfully submits that the record as set forth in this Court's May 30, 2008 Memorandum and Order ("May 30 Order") and as supplemented below warrants granting the Commission all relief requested herein.

## II.  ARGUMENT

A.  **The Court Should Permanently Enjoin Defendants from Future Securities Law Violations and Order Disgorgement and Monetary Penalties**

The Commission seeks permanent injunctions against future violations of the federal securities laws – specifically, Sections 5(a), 5(c) and 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder – against all Defendants, disgorgement of ill-gotten gains plus payment of prejudgment interest thereon, and an award of civil monetary penalties.

1.  The Court Should Issue a Permanent Injunction.

"A District Judge is vested with a wide discretion when an injunction is sought to prevent future violations of the securities laws." SEC v. Martino, 255 F. Supp. 2d 268, 290 (S.D.N.Y. 2003) (citations omitted). "[T]o award a permanent injunction a court must find (1) past violations of the securities laws and (2) a reasonable probability of future violations." SEC v. McCaskey, No. 98 CIV. 6153 (SWK), 2001 WL 1029053, at *5 (S.D.N.Y. Sept. 6, 2001).

This Court's May 30 Order was unambiguous in holding that Defendants violated numerous federal securities laws in connection with their operation of EDG, leaving only the probability of future violations for the Court to consider at this stage. "In addressing the probability of future infractions, the Second Circuit has articulated several relevant factors including: (1) scienter; (2) the isolated or persistent nature of the past fraudulent acts; (3) the defendant's recognition of the wrongful nature of the past conduct; and (4) the defendant's ability to commit future violations." McCaskey, 2001 WL 1029053, at *5. (citations omitted). Here, this Court has already held that Strashnov and Ayngorn have violated anti-fraud laws for which scienter is a requirement. (May 30 Order at 19-25.). Defendants' fraud took place over several

years through two separate offerings, and was not limited to one misrepresentation or omission but, rather, a series of actionable misstatements chronicled in this Court's May 30 Order. (Id.)

Furthermore, as this Court noted in its May 30 Order, the instant action is not the first time Strashnov has been charged with securities fraud. In an action brought by the New York State Attorney General's Office in 1996, Strashnov faced charges of fraud and misappropriation and ultimately consented to a judgment enjoining him from further violations of securities laws and prohibiting him from continuing to offer or sell any securities in New York until full restitution was paid to defrauded investors. (May 30 Order at 22; Moving Mem. at 4.)

The other factors for permanent injunctive relief are satisfied as well. Defendants have done nothing to suggest they recognize the wrongful nature of their conduct. To the contrary, Defendants continued to empty EDG's accounts of investors' funds on the very day, May 18, 2007, that this Court entered an order freezing EDG's accounts. (See Reply Mem. at 7.) In fact, in at least one instance, Defendants withdrew funds from EDG's account after this Court issued its May 18 order. (Id.) This speaks persuasively to Defendants willingness and ability to commit future violations, as does Strashnov's past behavior that led to his settlement with the New York Attorney General's Office. See SEC v. Batterman, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *9 (S.D.N.Y. Sept. 30, 2002) (defendant's previous conviction and regulatory sanctions support likelihood defendant would continue to engage in similar acts).

Consequently, the Commission urges this Court to make permanent the injunctive relief imposed on a preliminary basis through this Court's June 12, 2007 Order.

    2.    The Court Should Order Defendants to Disgorge Their Ill-Gotten Gains and Order Payment of Prejudgment Interest.

The Commission seeks disgorgement of Defendants' profits from the fraud perpetrated on investors in Empire Securities in the amount of $2.9 million (May 30 Order at 5, citing Ex. 6

to Sept. 11, 2007 Birnbaum Declaration, Updated EDGFI Verified Accounting submitted to Commission by Defendant EDGFI; see Ex. 3 to accompanying June 20, 2008 Birnbaum Decl.),[1] plus pre-judgment interest thereon. Disgorgement is an appropriate means of "forcing a defendant to give up the amount by which he was unjustly enriched." CFTC v. Commonwealth Chemical Secs., Inc., 574 F.2d 90, 102 (2d Cir. 1978). Indeed, "the deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972). Defendants acknowledge that they "received approximately $2,900,000 in total from investors." (May 30 Order at 5.); see SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1475 (2d Cir. 1996) (The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation.") (internal citation omitted).

Once the SEC has shown the existence of a fraudulent scheme, defendants bear the burden of demonstrating they received less than the full amount allegedly misappropriated. SEC v. Benson, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987); see also SEC v. Patel, 61 F.3d 137, 140 (2d Cir. 1995) (any uncertainty in calculating disgorgement falls on the wrongdoer whose illegal conduct created that uncertainty); SEC v. Inorganic Recycling Corp., No. 99 Civ. 10159 (GEL), 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002) (same). That Defendants orchestrated a fraudulent scheme to separate investors from their money is beyond dispute. (May 30 Order at 19-25.) Likewise, the record clearly demonstrates how Defendants squandered investors' funds on expenses that were not incurred for the benefit of EDG or its investors. Ayngorn and Strashnov paid themselves more than $1 million in salary despite express representations in

---

[1] Exhibit 3 to the June 20, 2008 Birnbaum Declaration is a true and correct copy of the Updated EDGFI Verified Accounting.

4

materials sent to investors stating otherwise. (Id. at 6.) This Court described Defendants' undisclosed, exorbitant salaries as "highly material omissions." (Id. at 20-21.) While Defendants' accountings do not account for every dollar collected from investors, the record is clear that what money was not taken directly by Defendants as salary was spent to perpetuate the existence of EDG so that Defendants could continue to defraud additional investors.[2] Thus, the entire $2.9 million collected from investors should be subject to disgorgement.

As co-participants in the fraudulent scheme, Defendants should be held jointly and severally liable for the full amount of disgorgement plus prejudgment interest thereon. SEC v. First Jersey, 101 F.3d at 1475 ("[W]here a firm's . . . owner and chief executive officer has collaborated in [unlawful] conduct and has profited from the violations . . . the court [may] determine that the owner-officer too should be subject, on a joint and several basis, to the disgorgement order.")

The Second Circuit has explained when prejudgment interest is appropriate:

> In deciding whether an award of prejudgment interest is warranted, a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. In an enforcement action brought by a regulatory agency, the remedial purpose of the statute takes on special importance. When the SEC itself orders disgorgement, which ... is designed to strip a wrongdoer of its unlawful gains, the interest rate it imposes is generally the IRS underpayment rate. ... That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud.

---

[2] For example, Defendants admit to (i) paying Ayngorn's father $200,000 for unspecified construction services rendered to improve homes purchased in Ayngorn's and Strashnov's respective family names (May 30 Order at 9); (ii) using investors' funds to service mortgages on those personal homes (Moving Mem. at 11); and (iii) using company funds to support Ayngorn's gambling and alcohol addictions (May 30 Order at 20-21).

First Jersey, 101 F.3d at 1476 (citations omitted). The Commission respectfully submits that all of these factors favor awarding prejudgment interest in this matter. The Commission calculated the total prejudgment interest due at $221,330.97. (See accompanying Birnbaum Decl. ¶¶4-5.)

       3.    <u>The Court Should Order Defendants to Pay Civil Monetary Penalties.</u>

"Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d), provide for the imposition of civil penalties for any violation of the Act involving 'fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement' that 'resulted in ... or created a significant risk of substantial losses." <u>SEC v. Opulentica, LLC</u>, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). Here, "[d]isgorgement alone is an insufficient remedy, since there is little deterrent in a rule that allows a violator to keep the profits if she is not detected, and requires only a return of ill-gotten gains if she is caught." <u>SEC v. Inorganic Recycling Corp.</u>, No. 99 Civ. 10159 (GEL), 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002). "Civil penalties are designed to punish the individual violator and deter future violations of the securities laws." <u>SEC v. Haligiannis</u>, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); see also <u>SEC v. Moran</u>, 944 F. Supp. 286, 296 (S.D.N.Y. 1996).

To determine what civil penalties should be imposed, "courts look to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." <u>Opulentica</u>, 479 F. Supp. 2d at 331. Here, Defendants created a real estate enterprise that had the primary purpose of benefiting Strashnov and Ayngorn at the expense of the company's investors, and Defendants did not stop after sending out a misleading offering

6

memorandum, but rather continued to send investors news releases and letters containing additional misrepresentations of material facts that this Court has found were "made with scienter." (May 30 Order at 19-25.) Where, as here, the only factor that might potentially militate in a defendant's favor is an inability to pay, maximum penalties should be imposed. See Inorganic Recycling Corp., 2002 WL 1968341, at *4 ("[Defendant]'s claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty.")

The penalty provisions set forth three tiers of penalties that a court may assess in a Commission enforcement action. The third tier is applicable in cases – such as this one – where the violations (1) involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (2) directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons.[3] "Third tier" penalties for are not to exceed the greater of $130,000 for "natural persons" ($650,000 for corporations) or the gross amount of a defendant's pecuniary gain. 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii).[4] Defendants' conduct plainly involved fraud, deceit, manipulation and deliberate recklessness and jeopardized entirely all funds invested in Empire Securities. Thus, Defendants' conduct satisfies the requirements for imposing the maximum allowable penalty.

Here, civil penalties can be computed in two ways. One way for the Court to calculate an appropriate civil penalty is to multiply the number of Defendants' securities law violations by the maximum per violation amount, $130,000 for the Individual Defendants and $650,000 for the

---

[3] "First tier" violations are violations without any additional qualifications; "second tier" violations are those involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77u(d)(3)(B)(i-ii).

[4] For violations committed after February 14, 2005, the maximum penalty for first tier violations is $6,500 for natural persons and $65,000 for all other persons, and the maximum penalty for second tier violations is $65,000 for natural persons and $325,000 for any other persons. The statute actually sets the penalties at lower amounts. However, pursuant to the Debt Collection Improvement Act of 1996, these amounts have been adjusted for inflation. 17 CFR § 201.1001.

7

corporate defendants, or any other per violation figure the Court deems appropriate. See generally SEC v. Invest Better 2001, 01-Civ.-11427 (BSJ), 2005 WL 2385452, at *4 (S.D.N.Y. May 4, 2005) (discussing calculation of civil penalties in securities fraud action) (citing SEC v. Credit Bancorp, Fed. Sec. L. Rep. (CCH) ¶ 92,021 (S.D.N.Y. 2002)); see also Kenton Capital, Ltd., 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (multiplying third tier penalty amount by number of investors victimized by violation). Defendants have identified 107 investors victimized by the EDG fraud. (See Exhibit 3 to the June 20, 2008 Birnbaum Decl., Updated EDGFI Verified Accounting, at Ex. A thereto (listing investors in Empire Securities).) Should the court seek a different multiplier, the Court may also consider the number of different misstatements and omissions made to the victimized investors. Here, the May 30 Order identifies at least eight different documents distributed to investors that contained material misrepresentations or omitted material facts, including Defendants' offering memorandum; letters dated December 8, 2004, March 18, 2005, January 6, 2006, June 1, 2006 and January 5, 2007 and two news releases distributed in 2005. (May 30 Order at 19-25.) Alternatively, the Court might choose to set the penalty based on the gross amount of Defendants' ill-gotten gains, which in this case amounts to the approximately $2.9 million collected from investors for worthless Empire Securities.

As set forth above, Defendants' egregious and repeated securities law violations warrant nothing less than the maximum penalty the law will allow for each defendant.

### III. CONCLUSION

For the reasons stated herein, the Commission respectfully requests that the Court enter the proposed judgment, including a provision ordering payment of the maximum civil penalties against all Defendants.

Dated: New York, NY
June 20, 2007

Respectfully submitted,

By: *Meaghan C. [signature]*

Meaghan Cheung (MC-2425)
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281
(212) 336-0050 (Cheung)
cheungm@sec.gov

Of Counsel:
Doria G. Stetch
Michael Birnbaum